IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| KAREN R. DUKE,<br>    PLAINTIFF,<br><br>V.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY,<br>    DEFENDANT. | §<br>§<br>§<br>§ CIVIL ACTION NO. 4:08-CV-637-A<br>§<br>§<br>§<br>§ |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b).  The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

FINDINGS AND CONCLUSIONS

A.    STATEMENT OF THE CASE

Plaintiff Karen R. Duke brings this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of the Social Security Administration denying her claim for supplemental security income (SSI) under Title XVI of the Social Security Act.[1]  She applied for SSI benefits on September 5, 2006, alleging

---

[1] In her complaint, Duke also challenges the Commissioner's denial of her concurrent application for disability insurance benefits under Title II of the Social Security Act, but her brief is limited to her SSI claim. In addition, Duke was denied disability insurance benefits because she was not insured for purposes of Title II during the period of time under consideration, and she has not challenged the accuracy of this adverse technical denial.  (Tr. 9, 88). *See* 42 U.S.C. § 423(a), (c); *Oldham v. Schweiker*, 660 F.2d 1078, 1080 n.1 (5th Cir. 1981).

disability commencing August 1, 2000.[2] (Tr. 85). The Social Security Administration denied her application both initially and on reconsideration, and Duke requested a hearing before an administrative law judge (ALJ). ALJ J. Frederick Gatzke held a hearing on April 28, 2008. (Tr. 20-37). On June 23, 2008, the ALJ issued a decision that Duke was not disabled and was not entitled to SSI benefits because she was capable of performing a modified range of sedentary work.[3] (Tr. 9-17). The Appeals Council denied Duke's request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 1).

B.   STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 416.920. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. An impairment or combination of impairments is severe if it has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work. 20 C.F.R. § 416.920(c); *Stone v.*

---

[2] SSI cannot be paid for the time preceding an application for benefits even if disability began earlier. *See* 20 C.F.R. § 416.335.

[3] Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. 20 C.F.R. § 416.967(a).

*Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if claimant's impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations. *Id.* § 416.920(d). Fourth, if disability cannot be found on the basis of claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* § 416.920(f). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* § 416.920(g); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198. A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id*. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* The court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th

Cir.2000); *Hollis*, 837 F.2d at 1383.

C.   ISSUE

Duke contends that the ALJ did not properly weigh the treating physician's medical opinions.

D.   ADMINISTRATIVE RECORD

1.   History

The medical records in the administrative transcript provide the following information: Duke has had a seizure disorder since childhood and takes anti-convulsant medications, including Dilantin and phenobarbital. An electroencephalogram in September 2004 was interpreted as normal. (Tr. 170).

Duke's primary care physician, Sat Gupta, opined in November 2005 that Duke was totally impaired. (Tr. 132). Duke was hospitalized from September 14-16, 2006, while adjustments were made to her medications, (Tr. 198), and Duke and her mother reported a series of seizures occurring in the weeks following her release from the hospital. (Tr. 115-16). Duke indicated that "absent" seizures occurred frequently, while full seizures occurred less often. (Tr. 118).

Gupta completed a medical statement in January 2006 in which he advised that Duke was permanently disabled due to a seizure disorder. (Tr. 191). Gupta also reported on October 16, 2006, that Duke suffered from generalized grand mal seizures despite her compliance with medication, but he did not specify the frequency with which those seizures occurred. (Tr. 133).

Gupta completed a Medical Source Statement in September 2007. He reported that Duke had convulsive epilepsy that occurred less than once per month, with no daytime episodes of loss

of consciousness, but nocturnal episodes that significantly interfered with Duke's daily activities. (Tr. 147). Gupta also reported that Duke experienced non-convulsive epilepsy that occurred more frequently than once a week and caused an alteration in awareness or loss of consciousness with transient postictal[4] manifestations of unconventional behavior or significant interference with daily activities. Her seizures had an average duration of two minutes. Gupta indicated that Duke's seizures did not include an aura, tongue-biting, loss of sphincter control, or injuries during an episode, but she did experience periods of confusion. (Tr. 147). Gupta indicated that he had not observed Duke during a seizure, but relied on the observations of Duke's mother. (Tr. 148).

Duke was hospitalized for a week in January 2008 for treatment of a gunshot wound to her back. (Tr. 209-71). She was discharged in fair condition with a prescription for pain medication. (Tr. 209).

2. Hearing

Duke testified that she was thirty-nine years old, had a GED, and most recently worked in a deli, but left that job after she separated from her husband. (Tr. 23-24). She did not have a driver's license because of her seizure disorder. (Tr. 25). Duke testified that she never knew when she might have a seizure. She testified that she was hospitalized in January 2008 for treatment of a gunshot wound inflicted during a family dispute, and shortly after she was released, had experienced a bad seizure. (Tr. 25, 29).

Duke also testified that she had spinal meningitis as a child, and as a result, her left arm was

---

[4] Postictal occurs to that which occurs after a seizure or sudden attack. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1524 (31st ed. 2007).

weaker than her right and sometimes felt numb, especially in cold weather. (Tr. 26). She avoided heavy lifting, but otherwise took care of her own household chores. (Tr. 25). Duke testified that she rarely left the house because she had become fearful after she was shot, and she complained of being unable to sleep at night. (Tr. 27-28).

Vocational expert Shelly Eike testified that Duke's previous employment as a deli worker was unskilled work requiring light exertion. (Tr. 33). The ALJ asked Eike to consider an individual of Duke's age, education, and work experience who was limited to sedentary work that did not involve exposure to cold temperatures, allowed her to use her non-dominant arm only as a helper, and did not require work around heights or dangerous moving machinery. (Tr. 34). Although Duke would be unable to perform her previous work, Eike testified that other work existed that would be suitable. Examples included food order clerk, with an estimated 27,000 jobs nationwide and 1,500 in Texas, or small items inspector, with 30,000 jobs nationwide and 2,500 jobs in Texas. (Tr. 34).

3.   ALJ Decision

The ALJ found that Duke had not engaged in substantial gainful activity since the date she filed for benefits and that she had severe impairments, including a seizure disorder and a history of spinal meningitis; however, he found that Duke had no impairment or combination of impairments that met or equaled the severity of any listed impairment. (Tr. 16). Instead, he found that she retained the exertional capacity for the sustained performance of a modified range of sedentary work, limited by her inability to work in cold environments, her ability to use her left upper extremity only as a helper, and her inability to work near heights or around dangerous moving machinery. The ALJ found Duke was unable to perform her past relevant work, but was capable

of performing other work that existed in significant numbers in the national economy. (Tr. 16-17). Accordingly, the ALJ concluded that Duke was not disabled and was ineligible for SSI benefits. (Tr. 17).

E.  DISCUSSION

Duke contends that the ALJ did not weigh the opinions of treating physician Sat Gupta in accordance with the regulations. She asserts that the ALJ's error was prejudicial because Gupta's opinions, if the regulations had been properly applied, would have been entitled to great weight. Duke also contends that the ALJ's assessment of her residual functional capacity (RFC) is not supported by any expert medical opinion.

Generally, opinions, diagnoses, and medical evidence from a treating physician who is familiar with a claimant's impairments, treatments, and responses should be given great weight in determining disability. *See Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). The ALJ assigns controlling weight to the opinions of a treating physician if well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 416.927(d)(2); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). The disability regulations also set forth factors to be considered in weighing medical opinions, which include the length of the treatment relationship, frequency of examination, nature and extent of the treating relationship, evidence supporting the opinions, the consistency of those opinions, and medical specialization. *See* 20 C.F.R. § 416.927(d);. *See also* SOCIAL SECURITY RULING 96-2p, 96-5p. But the determination of disability always remains the province of the ALJ, and the ALJ can decrease the weight assigned

to a treating physician's opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *Leggett*, 67 F.3d at 564; *Greenspan*, 38 F.3d at 237. *See also* 20 C.F.R. § 416.927(e).

Duke contends that the ALJ disregarded Gupta's opinions without addressing each of the factors outlined in the regulations. *See Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000)(requiring ALJ to consider the factors before declining to give any weight to treating source's opinions). The ALJ's decision, however, reflects that he was aware of and complied with his responsibilities in weighing the medical opinions in the record. (Tr. 12). He acknowledged that Gupta had issued a statement in January 2006 in support of Duke's food-stamp application, but also noted that this statement was not issued for purposes of diagnosis or treatment, did not refer to any diagnostic tests or clinical observations, and merely asserted that Duke was disabled without attempting to quantify her actual functional capacity. (Tr. 12). Moreover, conclusory opinions about a claimant's inability to work or general disability are not medical opinions entitled to special significance because they address the ultimate issue of a claimant's disability. *See* 20 C.F.R. § 416.927(e)(1).

As for Gupta's September 2007 statement, the ALJ did not summarily reject Gupta's opinion, but compared Gupta's assessment of Duke's epilepsy with the criteria of the applicable listed impairments and explained why he found no listing was met. (Tr. 12-13). Listing 11.02, which pertains to convulsive epilepsy, requires documentation of seizures occurring more than once a month. 20 C.F.R. Part 404, Subpart P, app. 1, § 11.02. The ALJ observed that Gupta reported that Duke's convulsive seizures occurred on a less than monthly basis; thus, there is substantial evidence

in the record to support the ALJ's conclusion that Duke did not meet listing 11.02 and that decision is wholly consistent with Gupta's opinions. (Tr. 12).

Listing 11.03 pertains to non-convulsive epilepsy, and requires documentation of seizures that occur more often than weekly in spite of treatment with alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with daily activities. 20 C.F.R. Part 404, Subpart P, app. 1, § 11.03. The ALJ recognized that Gupta's opinion indicated that Duke's seizure disorder satisfied Listing 11.03, but the ALJ declined to find that Duke indeed met that listing. The ALJ explained that Gupta had referred to Duke's postictal manifestations as "periods of confusion" that significantly interfered with Duke's daily activities without otherwise describing that interference, and the ALJ also found that Gupta's statement was inconsistent with Duke's own complaints.[5] (Tr. 13). In addition, the ALJ found no evidence that Duke experienced seizures at the specified rate and no frequent medical reports of immediate post-seizure treatment. (Tr. 13). Conversely, Duke contends in only the most conclusory fashion that Gupta's opinions were entitled to great weight. She presents no basis for disturbing the administrative decision. The ALJ properly weighed the opinions offered by Duke's treating physician and articulated good cause for not assigning controlling weight to those opinions.

Duke also contends that the ALJ's assessment of her RFC is unsupported because it is not based on any medical opinions in the record. Although an ALJ usually should request a medical source statement that describes the types of work-related activities that a claimant remains capable

---

[5] Duke asserts that the ALJ's decision contains nonsensical language, but the court agrees with the Commissioner's position that the confusion is a result of obvious typographical errors rather than a lapse in the ALJ's decision-making process.

of performing, the absence of such a statement does not render the administrative record incomplete. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). Instead, the inquiry focuses on whether substantial evidence nonetheless is present in the existing record. *Id.* Overall, the ALJ found that neither the objective medical evidence, including reasonable inferences therefrom, nor the other non-medical evidence established that Duke's ability to function was so severely impaired as to preclude all levels of work activity. (Tr. 12). The ALJ found Duke was capable of performing sedentary work, the least strenuous level of exertion, that accommodated impaired functioning in her left arm and her need for seizure precautions. Presented with these limitations, the vocational expert identified at least two jobs available in significant numbers that Duke would be able to perform.

The administrative record contains substantial evidence supporting the ALJ's assessment of Duke's RFC and his determination that Duke is not disabled as that term is defined and used in the Social Security Act.

RECOMMENDATION

The Commissioner's decision should be affirmed.

NOTICE OF RIGHT TO OBJECT TO PROPOSED<br>FINDINGS, CONCLUSIONS AND RECOMMENDATION<br>AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings,

conclusions and recommendation until July 1, 2009. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until July 1, 2009 to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED JUNE 10, 2009.

    /s/   Charles Bleil
UNITED STATES MAGISTRATE JUDGE